# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 22-cr-65-RGA |
| | : | Criminal Action No. 22-cr-66-RGA |
| KYLE STEVENS, | : | |
| Defendant. | : | |

## **DEFENDANT'S SENTENCING MEMORANDUM**[1]

The mental health challenges that Kyle faces must have always been apparent, to anyone who cared to pay attention. They materialized as cutting himself with razor blades while he was still a teenager, and suicide attempts in early adulthood. **Pre-Sentence Report ("PSR") ¶¶ 158-159;** Exhibit A – Psychological Report by Dr. Alexander Gould, Psy.D. (June 5, 2024) at 7-8. His struggles resulted in an early adulthood characterized by social isolation and loneliness. He has been diagnosed with major depressive disorder, recurrent, severe, and borderline personality disorder. **PSR ¶ 164**; Exhibit A at 18-19. He is currently prescribed forty-five milligrams (45mg) of Remeron

---

[1] As we do in every case, the defense has filed an Attachment A under seal for the court's review.

daily (**PSR ¶ 162**), which is the maximum dosage of the powerful antidepressant.[2]

Regrettably, the adults in his life turned a blind eye to these struggles, focused on their own addictions, and were ignorant of the ways in which their self-serving behavior exacerbated his struggle. Buoyed by his excellent academic performance, his mother chose to see his success as evidence of his well-being. Nothing could have been farther from the truth. To this day, when describing Kyle, his mother downplays her role in his depressive struggles, although she does now acknowledge it.[3]

Kyle sought counseling on his own, but the frequency of his relocation prevented any substantial therapeutic relationship from forming. As his mental health and life struggles piled up, he fell deeper into depression. His attempts at personal connection failed and he harbored feelings of ill-will toward those whose connection he had sought. In time, those inner thoughts became too much for him to bear alone and he verbally lashed out, resulting in the offense conduct in the stalking matter. There is no evidence that he ever planned to

---

[2] See Mayo Clinic: Mirtazapine (Oral Route), Proper Use https://www.mayoclinic.org/drugs-supplements/mirtazapine-oral-route/proper-use/drg-20067334#:~:text=Adults%E2%80%94At%20first,%2015%20milligrams%20(mg)%20once%20a%20day,%20preferably

[3] See Exhibit B – Character Letters of Josette Stevens, Mansour Farbod, Rhonda Wood, and Clemen Schweigler.

follow through on any of the threats he made. Rather, the overwhelming evidence is that these threats were made in desperate attempts to relieve the pressure that he felt internally while silently struggling with borderline personality disorder. As such, they often came in bunches during periods of time that lasted from two days to a week. **PSR ¶¶ 30-54.**

Alone and depressed in Germany, he craved a fresh start. When the pandemic led to the creation of financial relief programs for small businesses, Kyle, like many others who have been convicted and sentenced before him, saw the free-flowing government funds as a way to secure the financial freedom that he assumed would bring him psychological relief. In reality, the funds sat in accounts and have largely now been recouped by the government. Kyle now sits in a cell, ever depressed and still longing for the psychological relief he has been chasing for years. He faces sentencing in this court, but also the uncertain future of life after release. He fears prison, but he is grateful for the increased understanding of his mental health issues that he has gained through his arrest and pre-trial incarceration. He has benefited from counseling in the past (**PSR ¶ 160**) and looks forward to the supportive resources of the United States Probation Office upon his release.

The parties jointly and respectfully recommend that this court impose a sentence of eighty-seven (87) months, with a period of supervised release to

follow. This sentence serves the interests of justice and is sufficient, but not greater than necessary, to satisfy the purposes of sentencing as set forth at 18 U.S.C. § 3553(a). This suggested sentence considers Kyle's history and characteristics and the nature and circumstances of his criminal conduct.

I. <u>GUIDELINES</u>

The PSR properly sets the sentencing guidelines at seventy to eighty-seven (70-87) months. **PSR ¶ 187.** For reasons set forth here, the defense agrees that the government's sentencing recommendation of 87 months, which is within the guideline, is sufficient, but not greater than necessary.

II. <u>3553(a) SENTENCING FACTORS</u>

Kyle's repeated, and apparently compulsive, threats are concerning but must be contextualized in his long history of largely untreated mental health struggles and the psychological trauma of a childhood devoid of emotional support. Borderline Personality disorder must be treated with psychotherapy. His fraud requires punishment but is by no means exceptional in nature. In his report, Dr. Gould recommended that Kyle be provided dialectical behavioral theory (DBT), which is available in the Bureau of Prisons. Dr. Gould concluded that "It is essential that he learn alternatives to managing anxiety about relating with others that help him to cope without rumination and, ultimately, aggression. He will need to learn about the different factors that

contribute to this problematic cycle and to feel equipped to manage his distress differently."[4]  Fortunately, DBT is available through the Bureau of Prisons[5] and given a sentence of eighty-seven (87) months there will be ample time for Kyle to receive the treatment he needs before release. Here, a jail term is clearly necessary, but the length of that term need not exceed the top of the advisory guideline range. Indeed, there is no logical basis for imposition of a longer term of incarceration.

What is needed is a closely monitored period of supervised release and one that involves access to the significant resources that Kyle needs. Given Kyle's clearly demonstrated intellect, he may well have never found himself before this court had his numerous challenges not been neglected for so long. With such a long life ahead of him, this sentencing serves as a true opportunity to turn the tide from compulsive criminality to a healthier existence.

---

[4] Exhibit A at 19.
[5] Exhibit C – Federal Bureau of Prisons Program Statement No. P5310.17

III.   <u>CONCLUSION</u>

For the foregoing reasons it is respectfully requested that this court impose a sentence of eighty-seven (87) months and a period of three years supervised release with further conditions of release to be fashioned by the court at the time of sentencing.

                                           Respectfully submitted,

                                           ELENI KOUSOULIS
                                           Federal Public Defender

Dated: <u>September 26, 2024</u>      <u>/s/ *Conor Wilson*</u>
                                           CONOR WILSON, ESQ.
                                           Assistant Federal Public Defender
                                           800 King Street, Suite 200
                                           Wilmington, DE 19801
                                           (302) 573-6010
                                           de_ecf@fd.org

                                           Attorneys for Kyle Stevens